# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ASUS COMPUTER INTERNATIONAL, ) <br> ASUS TECHNOLOGY PTE LTD., ) <br> and ASUSTEK COMPUTER INC. ) <br> ) <br> Defendants. ) | C.A. No. 12-210-LPS <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS ASUS COMPUTER INTERNATIONAL, ASUS TECHNOLOGY PTE LTD., AND ASUSTEK COMPUTER INC.'S REPLY IN SUPPORT OF <u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER</u>**

|  |  |
|---|---|
| | ASHBY & GEDDES <br> John G. Day (I.D. #2403) <br> Lauren E. Maguire (I.D. #4261) <br> Andrew C. Mayo (I.D. #5207) <br> 500 Delaware Avenue, 8th Floor <br> P.O. Box 1150 <br> Wilmington, DE  19899 <br> (302) 654-1888 <br> jday@ashby-geddes.com <br> lmaguire@ashby-geddes.com <br> amayo@ashby-geddes.com |
| *Of Counsel:* | *Attorneys for ASUS Computer International, ASUS Technology Pte Ltd., and ASUSTeK Computer Inc.* |
| John P. Schnurer <br> Michael J. Engle <br> PERKINS COIE LLP <br> 11988 El Camino Real, Suite 200 <br> San Diego, CA  92130 <br> (858) 720-5700 <br> jschnurer@perkinscoie.com <br> mengle@perkinscoie.com | |
| Dated: June 11, 2012 | |

{00640938;v1 }

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. PERSONAL JURISDICTION .............................................................................................. 1

    A. No Specific Jurisdiction Over ASUSTeK Taiwan ..................................................... 1

        1. The Alleged Activities of ASUSTeK Taiwan Are Not In Delaware .......... 2

        2. No Showing of Agency .............................................................................. 2

        3. No Personal Jurisdiction for Distributors' Actions .................................... 3

    B. No Specific Jurisdiction Over ASUS Singapore ....................................................... 3

    C. No Specific Jurisdiction Over ASUS California For At Least The '119 Patent ........ 4

        1. Specific Jurisdiction Must Be Analyzed Claim-by-Claim ......................... 4

        2. The eStore Does Not Sell Any Accused Products of the '119 Patent ........ 5

        3. National Advertising Is Not Transacting Business in Delaware ................ 5

        4. Jurisdiction Requires Actions by ASUS California, Not Third Parties ..... 5

        5. Non-Commercially Interactive Websites Do Not Provide Jurisdiction ..... 6

    D. GPH Failed to Plead Stream of Commerce and Fails to Prove It Here .................... 6

III. JURISDICTIONAL DISCOVERY ....................................................................................... 7

IV. TRANSFER ........................................................................................................................... 8

    A. California Is More Convenient for the Third-Party Witnesses .................................. 8

    B. California Is More Convenient for the Parties, Because ASUS California and GPH's Predecessor Silicon Graphics Are Located There .................................. 8

    C. Delaware Is Not GPH's Home Turf .......................................................................... 9

    D. The Local Interest Is In California & The Claims Arose in California .................... 9

    E. The Patent Caseload of California Is Less Congested than Delaware .................... 10

    F. GPH's Other Cases In Delaware Involve Unrelated Patents Against Unrelated Defendants with Unrelated Accused Products .................................... 10

V. CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Applied Biosys., Inc. v. Cruachem, Ltd.*,
    772 F. Supp. 1458 (D. Del. 1991)..........................................................................................3, 5

*Asahi Metal Indus. Co. v. Sup. Ct.*,
    480 U.S. 102 (1987)......................................................................................................................6

*Avocent Huntsville Corp. v. ATEN Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008).....................................................................................................7

*Boram Pharm. Co. v. Life Techs. Corp.*,
    No. 10-31, 2010 WL 2802727 (D. Del. July 14, 2010) ...............................................................9

*Cephalon, Inc. v. Watson Pharms., Inc.*,
    629 F. Supp. 2d 338 (D. Del. 2009)..............................................................................................3

*Commissariat a l'Energie Atomique v. Chi Mei Optoelecs. Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005).....................................................................................................7

*D'Jamoos v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009)............................................................................................................7

*Eastman Chem. Co. v. AlphaPet Inc.*,
    No. 09-971, 2011 WL 6004079 (D. Del. Nov. 4, 2011)...............................................................7

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    No. 03-612, 2004 WL 2346137 (D. Del. Sept. 13, 2004).............................................................6

*Freres v. SPI Pharma, Inc.*,
    629 F. Supp. 2d 374 (D. Del. 2009)..............................................................................................2

*Goodyear Dunlop Tires Ops., SA v. Brown*,
    131 S. Ct. 2846 (2011)..................................................................................................................3

*In re Link_A_MediaDevices Corp.*,
    662 F.3d 1221, 1223-24 (Fed. Cir. 2011) .....................................................................................9

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)...................................................................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011).............................................................................................................3, 7

*LG Elecs., Inc. v. ASUSTeK Computers*,
   126 F. Supp. 2d 414 (E.D. Va. 2000) ...................................................................................5

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007)..................................................................................................4

*Microsoft Corp v. Geotag Inc.*,
   No. 11-175, 2012 WL 114128 (D. Del. Jan. 13, 2012) .........................................................9

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006) ......................................................................................7

*Phillips Elecs. N. Am. Corp. v. Contec Corp.*,
   No. 02-cv-123-KAJ, 2004 WL 503602 (D. Del. Mar. 11, 2004) ..........................................7

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
   658 F. Supp. 1061 (D. Del. 1987).........................................................................................2

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
   547 F. Supp. 2d 365 (D. Del. 2008) ......................................................................................6

*Remick v. Manfredy*,
   238 F.3d 248 (3d Cir. 2001)..................................................................................................4

*Sears, Roebuck & Co. v. Sears Plc*,
   744 F. Supp. 1297 (D. Del. 1990).........................................................................................2

*Telcordia Techs., Inc. v. Alcatel USA, Inc.*,
   No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) .....................................................8

*Teleconf. Sys. v. Proctor & Gamble Pharms., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ......................................................................................8

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984)....................................................................................................1

*Toys'R'Us, Inc. v. Step Two, SA*,
   318 F.3d 446 (3d Cir. 2003)..................................................................................................6

*Trintec Indus., Inc. v. Pedre Prom. Prods., Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005).............................................................................................5

*Tristrata Tech., Inc. v. Emulgen Labs., Inc.*,
   537 F. Supp. 2d 635 (D. Del. 2008) ......................................................................................5

**STATUTES**

28 U.S.C. §§ 1406(a), 1631 .........................................................................................................8

**I.      INTRODUCTION**

Defendants' motion should be granted.  For personal jurisdiction, GPH does not challenge any of the facts offered by Defendants, including that Defendants have no employees or offices in Delaware and none of the alleged acts of ASUSTeK Taiwan or ASUS Singapore occurred in Delaware.  GPH argues that mere knowledge of nationwide distribution without any intent to target Delaware is sufficient, yet that ignores controlling Supreme Court case law.

With regard to ASUS California, among the unchallenged facts are that ASUS California has never sold in Delaware any of the accused products for at least the '119 patent.  Indeed, GPH has not shown that the accused products for the '119 patent have been sold by *anyone* in Delaware (even a third party).  Accordingly, at least the '119 patent must be dismissed.

Given that, at best, only part of this case could survive in Delaware, transfer to the Northern District of California is particularly appropriate.  GPH has not challenged the fact that no witnesses, documents, or third parties are located in Delaware, while the Northern District of California is home to ASUS California; all ten named inventors; multiple prior art witnesses; prosecuting attorneys; and the former place of incorporation and principal place of business of GPH's predecessor Silicon Graphics.  Accordingly, this case should be transferred to California.

**II.     PERSONAL JURISDICTION[1]**

    **A.     No Specific Jurisdiction Over ASUSTeK Taiwan**

To establish specific jurisdiction, GPH may not rely on bare pleadings and must respond with actual proofs, not mere allegations.[2]  *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

---

[1] GPH never even mentions general jurisdiction.  Thus, Defendants focus on specific and dual jurisdiction here.
[2] While Defendants are happy to respond to evidence or case law, GPH's attorney arguments frequently fail to provide *any* proof (such as GPH's unsupported assertion that one inventor is now in Texas) or worse, provide a citation supposedly supporting a statement that turns out to be completely unrelated.  This begins with GPH's very first citation: "Asus Taiwan is one of the largest multi-national corporations for consumer electronics in the world and has annual revenue of over $1.25 billion. (Wang Decl. at ¶11.)" [D.I. 19 at 2.]  GPH did not submit a declaration from anyone named Wang, and paragraph 11 of the Wang declaration submitted by ASUSTeK Taiwan (which reads in full "ASUSTeK does not advertise directly in Delaware.") has nothing to do with the statement GPH cites it for. [D.I. 14 ¶ 11.]  In fact, ASUSTeK Taiwan's Wang declaration never mentions revenue of any sort, and ASUSTeK Taiwan's annual revenue is orders of magnitude away from $1.25 billion.  Again, the burden is on GPH to provide *actual proof*, not unsupported attorney arguments or citations that do not support its statements.

1.  **The Alleged Activities of ASUSTeK Taiwan Are Not In Delaware**

GPH alleges specific jurisdiction over ASUSTeK Taiwan based on three specific activities, all of which fail because regardless of GPH's reliance on Rhode Island cases, specific jurisdiction in Delaware "requires that some act on the part of the defendant occur *in Delaware* and that the plaintiff's claims arise out of that act." *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386 (D. Del. 2009) (emphasis added).

First, GPH argues ASUSTeK Taiwan manufactures the accused products. [D.I. 19 at 7.] Yet this cannot give rise to specific jurisdiction because the act of manufacturing is in Taiwan or China, not Delaware. [D.I. 14 ¶ 8.]

Second, GPH argues ASUSTeK Taiwan includes instruction manuals and user guides with the accused products. [D.I. 19 at 7.] Yet as with manufacturing, ASUSTeK Taiwan's act of including any documentation with the products occurs in Taiwan or China, not Delaware.

Third, GPH argues ASUSTeK Taiwan provides warranties for the accused products. [D.I. 19 at 7.] Section 3104 applies only to "a cause of action…*arising from*…the acts enumerated in this section." GPH does not allege that its claims of patent infringement *arise from* warranties, so jurisdiction cannot be based on them.[3] Thus, there is no proof offered that ASUSTeK Taiwan ever performed any act giving rise to the claims in Delaware.

2.  **No Showing of Agency**

Realizing the lack of any connection between ASUSTeK Taiwan and Delaware, GPH argues that ASUSTeK Taiwan should be subject to personal jurisdiction for actions of its subsidiaries. This is directly contrary to the corporate form and decades of Delaware precedent. Having wholly owned subsidiaries "does not make a subsidiary the agent of its parent." *Phoenix Canada Oil Co. v. Texaco, Inc.*, 658 F. Supp. 1061, 1085 (D. Del. 1987).

For agency,[4] Delaware looks not at the *ability* to control, but rather the extent the parent

---

[3] Only one page earlier in its brief, GPH also argues that the warranties are provided by ASUS California, not ASUSTeK Taiwan, [D.I. 19 at 6], and its own exhibit shows the copyright for the warranty page is to ASUS California, not ASUSTeK Taiwan. [D.I. 20-4.] GPH's inconsistent arguments fail for this reason as well.

[4] GPH does not allege an alter ego theory, nor can it. *Sears, Roebuck & Co. v. Sears Plc*, 744 F. Supp. 1297, 1304 (D. Del. 1990) ("[T]he plaintiff must show fraud, injustice, or inequity in the use of the corporate form.").

actually *exercises* that ability. "The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Applied Biosys., Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) (citation omitted). GPH has not argued *any* of these elements, thus conceding Defendants are distinct corporations with separate day-to-day management and adequate capitalization. GPH's only arguments are that Defendants share the same website and—without any evidence or case law—that ASUSTeK Taiwan "is the controlling entity of Asus Singapore and Asus California." [D.I. 19 at 8.] Yet GPH's own exhibits prove this is not true. The eStore that GPH relies heavily on is clearly operated and copyrighted solely by ASUS California, not ASUSTeK Taiwan. [D.I. 20-2.] The warranty page for North America also is clearly copyrighted by ASUS California, not ASUSTeK Taiwan. [D.I. 20-4.] The only case cited by GPH actually found exactly opposite what GPH argues here, holding that the defendant's "activities in Delaware are not sufficient to establish specific personal jurisdiction." *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009).[5] Thus, once again, GPH has offered only an unsupported conclusion.[6]

### 3. No Personal Jurisdiction for Distributors' Actions

Finally, whether under general jurisdiction or specific jurisdiction, the Supreme Court has made clear that merely having U.S. distributors (even exclusive distributors or subsidiaries) does not give rise to personal jurisdiction. *Goodyear Dunlop Tires Ops., SA v. Brown*, 131 S. Ct. 2846, 2852, 2855 (2011) (holding sales by subsidiaries cannot give rise to general jurisdiction); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011) (plurality) (finding no specific jurisdiction despite defendant appointing an exclusive U.S. distributor).

---

[5] The *Cephalon* court did find *general* jurisdiction because of sales personnel assigned to cover Delaware, *id.* at 349, yet here GPH does not argue general jurisdiction or that ASUS California has any personnel assigned to Delaware.

[6] In addition, "only the precise conduct shown to be instigated by the parent is attributed to the parent; the rest of the subsidiary's actions still pertain only to the subsidiary." *Applied*, 772 F. Supp. at 1464; *Cephalon*, 629 F. Supp. 2d at 348. GPH offers no proof ASUSTeK Taiwan instigated any *specific contacts* by ASUS California with Delaware.

### B. No Specific Jurisdiction Over ASUS Singapore

GPH's arguments for ASUS Singapore are even weaker than those for ASUSTeK Taiwan because ASUS Singapore does not manufacture the products, does not warranty the products, does not create any user manuals, and does not operate any of the websites identified by GPH. Nor does GPH explain how ASUS Singapore could "control" ASUS California as required for an alter ego or agency relationship when the two are related corporations, not parent and subsidiary. Accordingly, GPH's arguments against ASUS Singapore should be rejected.

### C. No Specific Jurisdiction Over ASUS California For At Least The '119 Patent

#### 1. Specific Jurisdiction Must Be Analyzed Claim-by-Claim

It is elemental that specific jurisdiction is assessed on a claim-by-claim basis.[7] *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). While GPH weakly argues there may be some rare exceptions to this rule, [D.I. 19 at 8], it provides no facts—let alone case law—why the normal rule would not apply here. GPH's claims regarding the '119 patent in no way derive from its claims for the other two patents. The '119 patent is not from the same family as either of the other two patents, and they do not share specifications. The '119 patent has three named inventors, yet only one named inventor overlaps on the '145 patent and none overlap on the '158 patent. That the three patents relate to the very broad category of "display technology" is nowhere near sufficient to justify breaking the normal rule. Even a cursory analysis of the claims shows that they relate to different specific technologies and use very different claim terms. Thus, as usual, specific jurisdiction must be examined for each patent separately.

While GPH alleges that an accused product for the '158 patent is available from a single third-party store in Delaware, [D.I. 20-6.], GPH is silent as to the jurisdictional basis for its allegations related to the '119 and '145 patents. The burden is on GPH, not Defendants, yet GPH failed to provide *any* evidence, even for sales by third parties. Moreover, Defendants'

---

[7] GPH alleges *Marten* stands for the proposition that additional factors such as fair play and substantial justice affect the claim-by-claim analysis, [D.I. 19 at 8], but fails to tell the Court that the text it quotes is wholly unrelated to whether jurisdiction is claim-by-claim. The statement GPH misquotes is simply the third prong of an *International Shoe* analysis (i.e., whether subjecting a defendant to personal jurisdiction comports with fair play and substantial justice), and is meant to protect a *defendant*, not a plaintiff. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

evidence that ASUS California has never sold the accused products for at least the '119 patent to customers in Delaware is unchallenged. Accordingly, at least the '119 patent must be dismissed.

### 2. The eStore Does Not Sell Any Accused Products of the '119 Patent

While GPH offers attorney argument that "any consumer in Delaware can purchase an infringing product from the Asus California eStore,"[8] [D.I. 19 at 6], GPH seems not to have examined its own exhibit. The eStore sells parts and accessories (none of which are accused) and a very limited number of refurbished computers. New computers are not available from the eStore. For example, GPH's sole exhibit lists only parts and accessories, not any accused computers. [D.I. 20-2.] Moreover, the eStore does not sell *any* monitors—let alone the VH-242H—which are the *only* accused products for the '119 patent. [*Id.*; D.I. 8 ¶ 15.] Thus, the eStore cannot serve as a basis for finding personal jurisdiction on at least the '119 patent.

### 3. National Advertising Is Not Transacting Business in Delaware

GPH next argues that national advertising subjects ASUS California to jurisdiction in Delaware. [D.I. 19 at 7.] The law holds otherwise: "Advertising in widely distributed national magazines does not qualify as transacting business in Delaware." *Applied*, 772 F. Supp. at 1467.

### 4. Jurisdiction Requires Actions by ASUS California, Not Third Parties

Likewise unsupported is GPH's attorney argument that ASUS California is subject to specific jurisdiction based on sales and ads by third parties such as Best Buy. [D.I. 19 at 6.] The proof submitted by GPH are two websites of Best Buy, not ASUS California. [D.I. 20-5, -6.] In order to demonstrate specific jurisdiction over ASUS California, GPH must offer proof that its claims arise out of activity by *ASUS California*, not Best Buy.[9] *Trintec Indus., Inc. v. Pedre Prom. Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("Trintec refers to the availability of

---

[8] GPH properly concedes the eStore is run solely by ASUS California, not ASUS Singapore or ASUSTeK Taiwan.
[9] GPH's reliance on cases such as *Tristrata* is thus especially misplaced. In that case, *the defendant* had received orders from and shipped products to Delaware residents. *Tristrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 640 (D. Del. 2008). Here, GPH relies upon sales by third parties (not Defendants) and even then has failed to provide proof of *any* sale of the accused products for the '119 patent by *anyone* in Delaware.

  GPH's reliance on Virginia case law is also bizarre because not only does Virginia have a different long arm statute, but also the court there transferred the case to the Northern District of California, exactly as Defendants are asking for here. *LG Elecs., Inc. v. ASUSTeK Computers*, 126 F. Supp. 2d 414, 424 (E.D. Va. 2000).

Pedre products on non-Pedre websites, but those sites would support jurisdiction only if Pedre had some responsibility for the third party's advertising."). Moreover, GPH has not even attempted to argue Best Buy is the alter ego or agent of ASUS California.

### 5. Non-Commercially Interactive Websites Do Not Provide Jurisdiction

The rest of GPH's alleged proofs regarding ASUS California are that ASUS California operates a website that provides user guides and other information on its products. [D.I. 19 at 7.] "Mere accessibility of a website, though, is not a matter of much moment. It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences." *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612, 2004 WL 2346137, at *3 (D. Del. Sept. 13, 2004). Here, GPH does not assert that ASUS California operates a commercially interactive website other than the eStore (which as noted above does not sell any accused products for the '119 patent). Nor has GPH identified how ASUS California has specifically directed its website *at Delaware*. *Toys'R'Us, Inc. v. Step Two, SA*, 318 F.3d 446, 454 (3d Cir. 2003). For example, the webpage submitted by GPH that identifies U.S. resellers never mentions Delaware. [D.I. 20-3.]

### D. GPH Failed to Plead Stream of Commerce and Fails to Prove It Here

First, GPH did not plead stream of commerce in its Complaint (let alone plead any facts for it), and it cannot rely on jurisdictional theories which it did not plead. [D.I. 8 ¶ 8.]

Second, even if considered, GPH's arguments crumble under any scrutiny because GPH fails to identify (let alone apply) the standard required. The very case cited by GPH states, "The analysis required to determine whether personal jurisdiction exists under Delaware's concept of 'dual jurisdiction' pursuant to Delaware's long-arm statute is functionally equivalent to Justice O'Connor's test [in *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102 (1987)] for determining whether an exercise of jurisdiction comports with Due Process in a stream of commerce case." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 375 (D. Del. 2008). In *Asahi*, Justice O'Connor required "something more" than "mere foreseeability" that a product might make its way into the forum while in the stream of commerce. *Asahi*, 480 U.S. at 111. Specifically, Justice O'Connor required "an action of the defendant purposefully directed toward

the forum State." *Id.* at 112.[10] The Third Circuit, Federal Circuit, and Delaware district courts all agree that targeting the United States as a whole is insufficient to constitute purposefully directing conduct at Delaware.[11] GPH points only to foreseeability and fails to identify any purposeful direction toward Delaware.[12]

Moreover, the focus must be on the actions of the *defendants* that target the forum; the actions of third parties such as distributors or end users are irrelevant. "A defendant's contacts…must amount to a deliberate targeting of the forum. The unilateral activity of those who claim some relationship with a nonresident defendant is insufficient." *D'Jamoos*, 566 F.3d at 103 (quotations omitted). GPH's reliance on a national market by distributors, with no evidence of Defendants targeting Delaware in particular, is thus insufficient to meet its burden.[13]

### III. JURISDICTIONAL DISCOVERY

Jurisdictional discovery should be denied. Defendants provided sworn declarations,

---

[10] This approach is confirmed by the recent Supreme Court decision *J. McIntyre*. While GPH attacks the case for being a fractured decision, both sides agreed that mere knowledge of national distribution was insufficient. Justice Breyer's concurrence rejected the assertion that "a producer is subject to jurisdiction…so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." 131 S. Ct. at 2793. Similarly, the plurality held "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789.

[11] *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) ("Pilatus's efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment."); *Avocent Huntsville Corp. v. ATEN Int'l Co.*, 552 F.3d 1324, 1340 (Fed. Cir. 2008) ("Avocent's allegation that Aten International products may be purchased in Alabama fails to establish…that Aten International purposefully directed its activities at residents of the forum."); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 646 (D. Del. 2006) ("[M]ere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough.").

In a Federal Circuit case prior to the decisions above, a Taiwanese defendant sold millions of products outside Delaware to customers that incorporated the defendant's modules into computer monitors. These monitors were sold by distributors throughout the U.S., including thousands in Delaware. The Federal Circuit said this probably satisfied Justice Brennan's foreseeability test, but not Justice O'Connor's requirement of conduct targeting Delaware. *Commissariat a l'Energie Atomique v. Chi Mei Optoelecs. Corp.*, 395 F.3d 1315, 1323-24 (Fed. Cir. 2005). The Federal Circuit remanded because at the time there was "substantial uncertainty" in whether Delaware's long-arm statute required mere foreseeability or rather Justice O'Connor's additional conduct. *Id.* at 1322. In light of subsequent cases such as *Power Integrations*, Justice O'Connor's requirement of conduct targeting Delaware is clearly required. Thus, just as in *Commissariat*, the Court should find Justice O'Connor's test is not met here.

[12] For example, GPH cites *Phillips Elecs. N. Am. Corp. v. Contec Corp.*, No. 02-cv-123-KAJ, 2004 WL 503602, at *4 (D. Del. Mar. 11, 2004). That case never expressly mentions dual jurisdiction or stream of commerce, though it did base specific jurisdiction on the argument that "Remote Solution knew or should have known that the accused RCUs were being sold or distributed in Delaware." *Id.* Yet that was precisely the argument rejected in *J. McIntyre*.

[13] The only post-*McIntyre* case cited by GPH did not find personal jurisdiction under a national market theory as GPH seems to suggest, but rather merely noted the uncertainty in the fractured *J. McIntyre* decision and granted limited jurisdictional discovery to identify sales and distribution *by defendants* of products *in Delaware*. *Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971, 2011 WL 6004079, at *18 (D. Del. Nov. 4, 2011).

while GPH provided only attorney argument directly contradicted by the *facts* and it entirely ignored the '119 patent. "Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied." *Telcordia Techs., Inc. v. Alcatel USA, Inc.*, No. 04-874, 2005 WL 1268061, at *9 (D. Del. May 27, 2005) (quotation omitted).[14]

## IV. TRANSFER

Because this Court lacks personal jurisdiction over ASUSTeK Taiwan, ASUS Singapore, and at least part of GPH's claims against ASUS California, the Court *must* dismiss or transfer those claims. 28 U.S.C. §§ 1406(a), 1631. The *Jumara* factors need only be considered for claims, if any, where jurisdiction and venue are proper, yet even then transfer is appropriate.

### A. California Is More Convenient for the Third-Party Witnesses

All ten of the named inventors are listed as residing in the Northern District of California,[15] as are numerous prior art witnesses, prosecuting attorneys, and GPH's own former employees from Silicon Graphics who are knowledgeable regarding any embodying products. [D.I. 12 at 14-15.] By contrast, GPH has not identified a single witness in Delaware or subject to Delaware's subpoena power. "The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer." *Teleconf. Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009).

### B. California Is More Convenient for the Parties, Because ASUS California and GPH's Predecessor Silicon Graphics Are Located There

ASUS California is headquartered in Fremont, California, and hence its current and

---

[14] In *Telcordia*, the plaintiff pointed to the defendant's website and argued that it was "possible" for Delaware residents to purchase products from the defendant's website. The Court denied jurisdictional discovery, saying "Telcordia misses the point" and that "the record does not support any documented sales to persons in Delaware." *Id*. The same is true here, especially for the '119 patent where GPH has failed to identify Delaware sales by *anyone*.

[15] While GPH cursorily mentions that it believes *one* of the ten named inventors may now reside in Texas, [D.I. 19 at 18], GPH fails to provide any *evidence*. The facts of record, including a patent application from just two years ago, all indicate that Daniel Evanicky resides in the Northern District of California. [D.I. 8-1 at 1 ("San Jose"); 8-2 at 1 ("San Jose, CA"); *see also* U.S. Pat. App. Pub. No. 2011/0188134 (filed April 22, 2010 by inventor "Evanicky; Daniel (San Jose, CA)").] GPH's statement that Mr. Evanicky is "the only common inventor on all three patents-in-suit" is also false. [D.I. 19 at 18.] Mr. Evanicky is not a named inventor on the '158 patent. [D.I. 8-3.] GPH also does not dispute that the other nine named inventors are in the Northern District of California.

former employees are predominantly in the Northern District of California. [D.I. 12 at 11.]

GPH's appeal that it would be a burden for GPH to litigate in California underscores the paucity of GPH's arguments. First, GPH's predecessor Silicon Graphics was incorporated and headquartered in the Northern District of California. [D.I. 12 at 12.] To the extent Silicon Graphics witnesses such as the named inventors are still employees of GPH, then GPH's employees are already in the Northern District of California. Second, to the extent GPH no longer employs such Silicon Graphics witnesses, GPH has presented no evidence that *any* of its employees would be required at trial. Third, none of GPH's employees are in Delaware so they would have to travel regardless of forum. Fourth, even if GPH had to send *a* witness to trial, the time and cost of sending one GPH employee to California is significantly less than sending dozens of Defendants' sales, marketing, and engineer witnesses to Delaware to address all three patents. Fifth, GPH's primary business is litigation. It can hardly complain that one of its employees may have to attend trial when litigation is GPH's entire business. *Microsoft Corp v. Geotag Inc.*, No. 11-175, 2012 WL 114128, at *2 (D. Del. Jan. 13, 2012).[16]

### C. Delaware Is Not GPH's Home Turf

"Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011). It is undisputed that GPH has no employees or offices in Delaware, so Delaware is not its home turf.

### D. The Local Interest Is In California & The Claims Arose in California

In this case, ten California inventors at a California corporation came up with inventions in California, and the alleged infringement involves a California corporation importing products into California and selling them from California. The local interest here is clearly California.

To the extent GPH argues a trivial number of sales arose in Delaware, [D.I. 16 ¶ 11 ("less than 0.02% of ASUS California's total revenue")], that pales in comparison to the nearly 100%

---

[16] GPH's argument that the parties should continue to litigate in the more expensive forum because they can afford to is also ridiculous. "The fact, as plaintiff notes, that the parties are large corporations and by implication can afford to indulge in litigation in this, the more expensive forum, is no reason for the court to countenance this indulgence." *Boram Pharm. Co. v. Life Techs. Corp.*, No. 10-31, 2010 WL 2802727, at *2 (D. Del. July 14, 2010).

of products imported into California and sales made from ASUS California's headquarters in Fremont, California. GPH's argument that 0.02% is somehow equal to 100% is disingenuous.

### E. The Patent Caseload of California Is Less Congested than Delaware

GPH's outdated data for time to trial (ending March 2010) emphasizes Defendants' point regarding the incredible explosion of patent cases filed in Delaware in the past year. GPH's outdated numbers show an average of roughly 100 patent cases per year in Delaware. [D.I. 20-10 at Table 2.] That number skyrocketed to 484 new patent cases in 2011. [D.I. 12 at 19.] Thus, the congestion of patent cases in Delaware is now *five times higher* than historical averages. That compares to only 225 new patent cases in the Northern District of California. [*Id.*] Thus, the relative court congestion weighs in favor of transferring the case to California.

### F. GPH's Other Cases In Delaware Involve Unrelated Patents Against Unrelated Defendants with Unrelated Accused Products

GPH misleadingly suggests that its other cases in Delaware involve "very similar if not identical issues." [D.I. 19 at 19.] As an initial matter, GPH does not provide a single fact supporting such assertions. The *facts* are that none of the defendants are related to Defendants here and there is no overlap in the accused products. The patents in each of the cases do not even match the patents in this case. For example, in the Panasonic case (No. 12-cv-211-LPS), GPH has only asserted two of the patents from this case and has also asserted two other unrelated patents that are not from any of the same patent families and only share a single named inventor. This scenario is similar to that of *Zimmer* in which the Federal Circuit ordered a transfer when "the cases involve different products with only a single overlapping patent and no defendant is involved in both actions." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).

Finally, Defendants have also conclusively shown that Defendants have not sold *any* of the accused products for at least one patent-in-suit in Delaware, and as such, the Court must dismiss or transfer at least that patent. Even if GPH could show personal jurisdiction were proper for the remaining two patents (which it has not), it makes little sense to litigate two patents in Delaware when the remaining patent can only be litigated in California.

## V. CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants respectfully request that the Court grant the motion to dismiss or, in the alternative, to transfer.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | */s/ John G. Day* |
|  | John G. Day (I.D. #2403)<br>Lauren E. Maguire (I.D. #4261)<br>Andrew C. Mayo (I.D. #5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>jday@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>amayo@ashby-geddes.com |
| *Of Counsel:* | *Attorneys for ASUS Computer International, ASUS Technology Pte Ltd., and ASUSTeK Computer Inc.* |
| John P. Schnurer<br>Michael J. Engle<br>PERKINS COIE LLP<br>11988 El Camino Real, Suite 200<br>San Diego, CA 92130<br>(858) 720-5700<br>jschnurer@perkinscoie.com<br>mengle@perkinscoie.com |  |

Dated: June 11, 2012