**ASHBY & GEDDES**

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

August 15, 2013

The Honorable Leonard P. Stark
United States Magistrate Judge
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

**REDACTED PUBLIC VERSION**

VIA ELECTRONIC FILING
and HAND DELIVERY

Re:  *Graphics Properties Holdings, Inc. v. ASUS Computer International, Inc.*,
C.A. No. 12-210-LPS

Dear Judge Stark:

Defendant ASUS Computer International ("ACI") respectfully requests relief from the Court on the following discovery issues, which the parties have been unable to resolve.

**Interrogatory No. 18 (Embodying Products and Marking)**

Interrogatory No. 18 seeks the identification of products of GPH, GPH's predecessor Silicon Graphics, or GPH's licensees that practice each of the patents-in-suit. This request is relevant to at least damages, claim construction, and invalidity. A patentee must mark its products practicing a patent-in-suit with the patent number, and ensure its licensees do the same, if it wishes to recover damages prior to the date it notified the alleged infringer. *See e.g., Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-85 (Fed. Cir. 1994). If GPH cannot identify products of its own or its licensees that practice the patents-in-suit, it cannot claim to be diligent in marking such products, and damages (as well as discovery) should be limited accordingly.

GPH has refused to identify all responsive products and instead identifies only a handful of cherry-picked products. Moreover, for the few products GPH has identified, GPH refuses to say which specific claim (or even which patents-in-suit) are practiced by that product, stating instead that the products practice "one or more claims of one or more of the Patents-in-Suit." *See* Exh. 1 at 33-35. This is especially problematic because GPH's interrogatory responses are generic to *all* defendants in the related cases, yet only three of the six patents are even asserted against ACI. Thus, ACI does not know whether these identified GPH products even practice any patent relevant to the ACI case. GPH has cited to certain documents from prior litigations, but those documents do not address all of the products GPH has identified, let alone all of the patents. For example, the '119 patent was not at issue in any of the prior litigations. GPH did agree to supplement by August 9, 2013, only the portion of this interrogatory related to GPH's marking efforts, but to date, GPH still has not done so.

Because GPH is unwilling or unable to meet its burden of identifying which products practice the patents-in-suit, or even what efforts it took to mark, it should not be allowed to argue that it has met its burden of identifying and marking embodying products under 35 U.S.C. § 287, and ACI respectfully requests that the damages period in this case (and discovery obligations) should be limited accordingly. Similarly, if GPH refuses to identify which patents and which claims are supposedly practiced by its own products or those of its licensees, GPH should not be allowed to use embodying products for any other purpose, such as claim construction or secondary considerations of non-obviousness.

**Infringement Contentions**
*Failure to Chart Each Accused Product or Provide Basis Why Charts Are "Representative"*

GPH has failed to provide infringement contentions or any adequate basis for alleging infringement of at least 339 of the 341 products accused of infringing the '145 patent. The '145 patent relates generally to the construction of LCD panels. GPH accused 341 different ACI products of infringing the '145 patent. *See* Exh. 2. These products use more than one hundred different LCD panels from at least nine different manufacturers — a fact GPH is well aware of based on information provided by ASUSTeK in January as part of GPH's agreement to dismiss ASUSTeK. Yet in its infringement contentions, GPH charted only 2 of these products. *See* Exhs. 3 & 4. Furthermore, although GPH alleged these 2 products are "representative" and "substantially similar" to other accused products, it provided no *evidence* for that allegation or justification for asserting that nine different manufacturers designed hundreds of different panels exactly the same way for every claim element. This is especially troubling because GPH concedes half those manufacturers are licensed to the '145 patent. Indeed, GPH did not provide additional claim charts even when adding an entirely new category of accused products (i.e., tablets).

The *only* document GPH identified throughout the meet and confer process as supporting its "representative" argument was a single figure from a single report (drafted neither by ACI nor any of the panel manufacturers supplying components for ACI products), which GPH cited as evidence for a single claim element. *See* Exhs. 3-4 at 2. The problems with GPH's argument are manifest, especially given that GPH never applied that figure to *all* elements of *all* asserted claims. That single figure never discusses any accused ACI product; doesn't require all LCD panels of a single manufacturer to be the same, let alone different manufacturers; doesn't require panels for completely different product lines and completely different sizes (ranging from huge monitors to tiny tablets) to be the same; and doesn't require panels to have been exactly the same at all times from 2006 to the present. GPH's own charts prove the accused products are *not* the same for every element of every claim: one of GPH's two charts asserts claims 6 and 20 while the other does not. Yet GPH has not identified which of the remaining 339 uncharted products are accused of infringing claims 6 and 20 and which are not.

On August 14, 2013, *less than 24 hours before this letter was due to the Court* and three months after ACI informed GPH of the deficiencies, GPH served "supplemental" contentions for the '145 patent. *See* Exhs. 5 & 6. GPH's supplementation highlights its lack of evidence for accusing 300+ ACI products for the '145 patent, as well as its lack of diligence in supplementing its infringement contentions. Instead of charting additional ACI products, GPH only cites to more publicly available documents (produced on August 13, 2013) that do not mention ACI products or ACI components. GPH claims that such documents suggest all or "nearly all" commercially available LCD displays would infringe the '145 patent. As an initial matter, there is no reason GPH could not have provided these publicly available documents and contentions *months* ago. Second, GPH cannot rely on the threadbare assertion that infringement is "universal," particularly when: (1) GPH's amendments address only a *single* claim element; (2) GPH's own contentions concede that *some* LCD panels do not infringe (e.g., not only does "nearly all" mean some do not, but also GPH's own cited documents say not all compensation films are "for providing increased off axis angle viewing capability in both the vertical and horizontal directions" as required by the claims, e.g., some are for color correction); (3) LCD panels existed years before the '145 patent so if GPH were right that *all* LCD panels *necessarily* infringe, then the '145 patent *necessarily* would be invalid; (4) some of GPH's cited documents are of questionable technical quality, such as GPH's reliance upon the stock-picking website Seeking Alpha; (5) GPH refuses to provide a list of products from its own predecessor or licensees that practice the '145 patent on the ground of "burden," when for infringement GPH says it is easy to identify products because infringement is "universal"; and (6) GPH still has not identified the "optical compensation film" *even in the ACI products GPH disassembled and charted*.

This Court's Scheduling Order required GPH to provide infringement contentions pursuant to

§ 4(c) of the Default Standard for Discovery of Electronic Documents by February 13, 2013. D.I. 40 at 4. GPH's attempt to include 339 uncharted products (without even an identification of what claims such products allegedly infringe) does not comply with the Court's Scheduling Order or the Court's Default Standard, which requires a claim chart for "*each* accused product." Despite being put on notice of these deficiencies on multiple occasions (including a letter dated May 21, 2013, Exh. 7), GPH refused to either chart all of the accused products or provide *evidence* for why the two charted products are substantially the same as the 339 uncharted products. GPH's eleventh-hour supplementation is simply too little too late. Under similar circumstances, Judge Andrews recently found that such uncharted products were not properly accused. *See Round Rock Research LLC v. Lenovo Group Ltd.*, No. 11-1011-RGA, D.I. 86 (D. Del. June 14, 2013) ("the only accused products are the ones for which the Plaintiff has done infringement contentions and complete claim charts"). Courts across the country have reached the same conclusion. *See, e.g.*, *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:12-cv-952-DMC, 2012 WL 5818143, at *5 (D.N.J. Nov. 14, 2012) (striking patentee's infringement contentions for uncharted products where patentee "asserts that 'its theories of infringement remained consistent across all products studied,' yet offers no evidence to prove that"). Notably, the patentee in *Voxpath* had provided 107 charts for 513 accused products, showing the patentee there had done far more pre-suit investigation than GPH's mere two charts for 341 products. Indeed, when asked to describe its pre-suit investigation, such as in Interrogatory No. 12, GPH refused to provide *any* information, including whether it investigated or reverse engineered *any* of the 339 uncharted products.

GPH cannot force ACI to provide discovery and contentions on 339 uncharted products which GPH has deliberately failed to provide any basis for accusing. ACI does not make the LCD panels (nor for that matter does third party ASUSTeK), so ACI would be forced to perform substantially the same analysis as GPH. Moreover, GPH has not been diligent in analyzing any of the 339 uncharted products or in supplementing its contentions, as evidenced by its eleventh-hour supplementation. Finally, including 339 more products in the case—especially when GPH has refused to provide any basis for accusing such products—is incredibly burdensome on ACI and ultimately the Court at trial. Therefore, just as in *Round Rock v. Lenovo* and *Voxpath*, ACI respectfully requests that GPH's infringement contentions should be limited to the two charted products.

*Failure to Identify the Accused Components*

Even for the two ACI products GPH has charted, GPH never identifies what, if anything, constitutes the claimed "optical compensation film." *See* Exhs. 3-6 at 2. Although GPH disassembled the two charted accused products and identified other accused components such as the "brightness enhancement layer," for the claimed "optical compensation film" GPH in both its initial and supplemental contentions does not identify *any* specific component. GPH only cites to documents downloaded from non-ACI websites, many of them more than five years old, that do not purport to describe any ACI product or component. The cited documents also do not define any industry standard; even if they did, GPH's failure to link these document to the specific components within ACI's products still would be insufficient. *See, e.g.*, *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 708 (E.D. Tex. 2008) ("Plaintiff cannot rest its Infringement Contentions on this standard alone without specifically linking the 802.11n-standard configuration to the Accused Products."). If GPH believes a compensation film exists in ACI's products, GPH must identify what that element is in ACI's products.

**Failure to Supplement**

GPH agreed to supplement its responses to Interrogatory Nos. 12 (on first awareness) and 15 & 17 (both relying on Rule 33(d) without identifying any documents) by August 9, 2013. *See* Exh. 1. To date, GPH still has not supplemented. GPH also has refused to respond to any interrogatories it deems contentions, including Interrogatory Nos. 4, 6, 8, and 10, until all the defendants in all the cases agree to exchange contention interrogatories, yet to date GPH has made no efforts for an agreed-upon exchange date. *Id.* ACI respectfully requests that GPH be ordered to respond to these interrogatories in full within one week of the Court's Order.

The Honorable Leonard P. Stark
August 15, 2013
Page 4

                              Respectfully,

                              */s/ Andrew C. Mayo*

                              Andrew C. Mayo

ACM:nlm

cc: All Counsel of Record (via electronic mail)

Case 1:12-cv-00210-LPS Document 113 Filed 08/22/13 Page 4 of 4 PageID #: 3165
The Honorable Leonard P. Stark

{00777189;v1 }